LITTLE
ROCK,
Jan'y 1839

HUGHES
vs.
MARTIN
& OTHERS.

ISAAC HUGHES *against* BENNETT H. MARTIN AND OTHERS.

ERROR *to Johnson Circuit Court.*

Where the affidavit to hold to bail, in an action of debt on writing obligatory, states that the action " is founded on a real subsisting debt, and this affiant verily believes that the sum of six thousand dollars as bail, will not be more than satisfy the debt and costs," it, is sufficient, under the Territorial statute.

Where a writ is directed to the sheriff and served by the coroner, it is not a legal ground to dismiss the suit on motion.

Where a suit is brought against persons residing in different counties, if one of the defendants resides in the county where the suit is brought, it is sufficient; and if not, it must be taken advantage of by plea to the jurisdiction, and not by motion to dismiss.

This was an action of debt, upon a writing obligatory, brought by the plaintiff in error against the defendants in error; and a capias ad respondendum issued on the following affidavit, made the plaintiff, to wit: " That the action of debt that he is now about to institute, against the defendants, is founded on a real subsisting debt, and this affiant verily believes that the sum of six thousand dollars as bail, will not be more than will satisfy debt and costs."

A capias thereupon issued to the sheriff of Johnson county, which was served on *Wooster,* one of the defendants, by the coroner of said county; and a counterpart issued to Pope county, which was served on the other defendants.

At the return term, *Wooster* separately, and the other defendants jointly, moved to dismiss the suit, for reasons filed in writing, which motions were sustained, the suit dismissed, and judgment for costs given against the plaintiff, from which he appealed.

LINTON, for the appellant:

No cause alleged in either of the written motions can be sustained. It is believed from the declaration and writing obligatory there set out, no affidavit was necessary to hold to bail, and the filing an affidavit was *ex abundante cautela* and therefore could not vitiate, but if the affidavit was necessary it was both good in form and substance. *Digest* page 317, sec. 11 and 12. As to the writ issuing contrary to law, it is only necessary in addition to sections last referred, to refer to sec. 18;

LITTLE
ROCK,
Jan'y 1839
HUGHES
*vs.*
MARTIN
& OTHERS.
also page 312, *of the same book.* Be that as it may it is contended that if the court below had jurisdiction of the subject matter, but no jurisdiction of the persons of the defendants, the defendants could only have availed themselves of their privilege by a plea in abatement and that sworn to. See *McKee* vs. *Murphy* and the authorities there cited, *ante* page 56. It is further contended that if the court dismissed said suit for want of jurisdiction, the court below erred in giving judgment for cost—see case last referred to.

It is contended that if a writ should irregularly issue, or the sheriff should make a defective return on a good writ, it would be error or defective writ. The court could only quash the return or award an alias writ: the court will always go back to the first error, but if any thing remains that is good, the party will not be driven out of court, but will be left to mature his case from that which is good: in England the original writ was the inception of the action; in Arkansas the declaration: See digest, page 319, sec 18.

CUMMINS & PIKE, *contra.*

The defendants in error contend that the decision of the court below was correct. The plaintiff in error admits that perhaps the affidavit is defective, but contends that an affidavit was altogether unnecessary, and therefore the writ properly issued.

The first question therefore presented to the court is, is it necessary, in an action of debt upon a bond, that an affidavit should be filed, to au thorize the issuance of a *capias ad respondendum*

The statute upon which the practice in this respect must be founded, is in the following words: " In all actions of debt founded on any judgment, writing obligatory, bill, or note in writing, for the payment of money or other property, in actions of covenant, and in actions on the case where the plaintiff makes affidavit or affirmation of a real subsisting debt, and of the sum in which he verily believes the defendant ought to give bail to secure such debt and costs," he may sue out a capias ad respondendum. *Dig.*, page 317.

It is admitted that according to the common practice of the country, a capias has constantly issued in actions of debt upon notes or bonds, without affidavit, and the true construction of the law has been considered to be that an affidavit is only required in actions on the case. Common error, however, does not create law, and the defendants contend that by the true and natural construction of the whole sentence an affidavit is required in every action mentioned in it.

Wherever the statute law of any of these free states or territories had innovated upon the English law, it is proper to construe the statute by which the change is made, with reference to its bearing upon the rights of the citizen. It is not to be imagined that the common law or statutes of England, were more tender and careful of the rights of the *subject*, than those of our free government are of the rights of the citizen. The spirit of our laws is to liberalize—to guarantee the freedom of all, and to put no man without good reason, in the power of another.

In England no arrest was allowed except for *crimes* and in actions of *trespass*, until the *statute of Marlbridge*, 52 Henry III, c. 23, which allowed the writ of capias in actions of account; 25 Edw. III, sec. 3, c. 17, first gave it in *debt* and *detinue*: 19 Henry VII, ch. 9, in *case* and *assumpsit*: 12 Geo. I, c. 29, required an affidavit of a cause of action of £10 or upwards ; increased by 7th and 8th Geo. IV, c. 71, to £20. See 1 *Tidd.* 145; 3 *Ch. Prac.* 323, 4, 5.

In England an arrest without an affidavit is utterly void, and no supplementary affidavit is allowed: 3 *Ch. Prac.* 332. The affidavit must be *certain to every intent*—of a subsisting debt—of the *equitable* and not the legal debt—and so worded that it would support an indictment for perjury: *Ch. Prac.* 334; 1 *Tidd.* 194, 195.

There must be an affidavit where the suit is on a note or bond, and it must state the sum *actually due* thereon: *Ch. Prac.* 334; 1 *Tidd.* 195.

It certainly was not intended by the legislature that our statute should be less regardful of the right of personal freedom, than the statutes of England—and if the statute under consideration will bear two constructions, the court will incline to interpret it in such a way as shall be most consistent with the general spirit of our laws and institutions. The different clauses of the sentence are only separated by *commas*, and manifestly there is no impropriety in construing the last clause as applying equally to each of the three preceding. There are obvious reasons why it should be so construed. The mere fact of a party being indebted, cannot subject him to imprisonment before judgment. Two things are required by the affidavit—first, a showing of indebtedness—second, of the sum in which the plaintiff verily believes he should be held to bail, *in order to secure the debt.* It must appear from the affidavit, that there is reason to fear that without the capias the debt will be lost. It is this showing, not the allegation of indebtedness, which warrants the arrest. Is there any reason why this showing

Y

LITTLE
ROCK,
Jan'y 1839

HUGHES
vs.
MARTIN
& Others.

should not be made as well in actions on bonds as on simple contracts? Did the legislature intend to declare that so soon as the creditor should obtain from his debtor a written acknowledgment of his debt, he should have the power to imprison him, or did they not rather intend that the debtor should be incarcerated only when the creditor has good ground to apprehend fraud or evasion? Clearly the latter. And by the constitution even a judgment gives no right to imprison.

Grant that a capias may issue without affidavit, and what consequences result? The note by our law is not required to be filed, and the only evidence submitted to the clerk is the declaration. It is urged that the note or bond is evidence of the debt or duty, not to be controverted or denied except on oath. But we have already shown that indebtedness is not sufficient—and the note or bond is not evidence that the plaintiff is in danger of losing his debt. Admit that the note or bond is evidence of the debt, which it is not except in certain cases—yet the note or bond not being filed, the declaration, on which alone the capias issues, is not evidence of the debt.

Admit this construction, and a declaration may be filed with ten counts, all fictitious but one, and if each count is on a note for a thousand dollars, the defendant may be held to bail in the sum of ten thousand dollars. The plaintiff may declare on a penal bond, for the penalty of a hundred thousand dollars, and demand bail in that sum, while the damages he has sustained, the equitable debt due him, may not be a hundred.

The law might always be evaded—for I might join with a count on a real subsisting simple contract debt, a count on a fictitious note, and so hold to bail on my simple contract debt.

I would have in my power the liberty of every man—for it would be only necessary to file a declaration on a fictitious note, for a million of dollars, or as much more as I pleased, and demand bail on that amount. What remedy would there be? None. I am not required to file the note until court—and the bail is not exorbitant, from the face of the declaration.

That the note is evidence of the debt is no reason why a capias should issue, because it is as much evidence in assumpsit as in debt—and a bond is as much evidence in covenant as in debt. Assumpsit and debt, and covenant and debt, are concurrent remedies on many writings. Did the law intend that the plaintiff should have the right

LITTLE
ROCK,
Jan'y 1839

HUGHES
*vs.*
MARTIN
& OTHERS.

to imprison in one form of action, when in another form of action on the same instrument he has it not ?

No reason can be urged why if an affidavit is required in case, it should not also be in covenant. They both sound in damages—and it is not possible to decide from the face of the instrument, what is "*the real subsisting debt.*" Connect the clause requiring an affidavit with the clause mentioning actions of covenant and by all the rules of construction you must also connect it with the first clause. Nor in an action on a penal bond does the "real subsisting debt" appear on the face of the bond, for it is in reality an action for damages, bearing generally a very small proportion to the penalty. Nor does the face of any bond or note show "the real subsisting debt," because it may be wholly or in greater part paid.

The defendants therefore conceive that in the suit below, it *was* necessary for the plaintiff to file an affidavit, in order to warrant the issuing of a capias.

Does the affidavit filed comply with the requisitions of the law ? Is it one upon which a capias could issue?

The substance of the affidavit filed is as follows; "That the action of debt that he is now about to institute is founded on a real subsisting debt, and this defendant verily believes that the sum of six thousand dollars as bail, will not be more than will satisfy debt and costs." The affidavit required by the statute is, of " a real subsisting debt, and of the sum in which he verily believes the defendant *ought* to give bail to secure such debt and costs." The affidavit filed does not follow the statute, nor does it show, even by implication or reference, that bail was *necessary*, " in order *to secure* the debt and costs." It is a mere affidavit of indebtedness, and wants the very requisite which alone gives the right to abridge the personal liberty of the debtor.

That the objection was properly made by motion, see 1 *Tidd*. 181; 3*d Ch. Pr.* 368. It is not matter in abatement, but shows the writ to be unauthorized and wholly void. The motion to dismiss was therefore properly sustained.

Upon *Wooster*, even if the issuing of the writ had been authorized by law, there was no legal service. The writ against him was directed to the *sheriff*, and served by the *coroner*. By the general provisions of our law, all process is to be directed to the *sheriff*. *Dig. p.* 316, 317. The coroner is authorized to serve writs and process, when the office of sheriff is vacant, or when the sheriff is a party to the suit, interested

LITTLE
ROCK,
Jan'y 1839
~~~~
HUGHES
vs
:MARTIN
& OTHERS.
in the suit, related to either party, or prejudiced against either party. *Dig. p.* 136. And when both sheriff and coroner are disqualified, the court is to direct the process to elisors.

Process can only be served by the officer to whom it is directed, or his deputy. *Howe's Pr.* 93, 94; and authorities referred to below.

If the sheriff is disqualified, the process must be *directed* to the coroner. *Howe's Pr.* 94; *Colby* vs. *Dillingham et al.* 7 *Mass.* 475; *Weston* vs. *Coulson,* 1 *Black. Rep.* 506; *Wood* vs. *Ross,* 11 *Mass.* 271; *Brice* vs. *Woodbury et al.,* 1 *Pick.* 362.

There being in this case no showing of any kind, which under the law would authorize the issuing of the writ to the coroner, this court is now bound to presume that the sheriff was neither dead, out of office, or disqualified. A service by the coroner in such case is no more than a service by any private person, and such mistake is fatal—for a coroner cannot serve a writ, if the sheriff or his deputy may. *Gage vs. Graffam,* 11 *Mass.* 181; *Merchants' Bank* vs. *Cook,* 4 *Pick.* 405.

This fault may be taken advantage of, either by plea in abatement, or motion to dismiss the action, if made before appearance entered.— *Campbell* vs. *Stiles,* 9 *Mass.* 217; *Gage* vs. *Graffam,* 11 *Mass.* 181; *Pollard et al.* vs. *Dwight et al.* 4 *Cranch* 421.

The motion to dismiss therefore, as to *Wooster,* on this ground also, was properly sustained: And the suit being pending in Johnson county, and dismissed, as to the defendant residing in that county, the court had no jurisdiction of the defendants residing in Pope. The case stood, after the dismissal as to *Wooster,* precisely on the same footing as though it had been originally commenced in Johnson county, against defendants residing in Pope, and by process only directed to the sheriff of Pope, in which case the Circuit Court of Johnson county would clearly have had no jurisdiction. But the case being dismissed properly on other grounds than want of jurisdiction, costs were properly adjudged.

RINGO, *Chief Justice,* delivered the opinion of the court: '

This is an action of debt founded upon a writing obligatory, instituted by the plaintiff in error against the defendants, in the Circuit Court of Johnson county. The plaintiff filed in the clerk's office his affidavit, which is subscribed and sworn to before the clerk, stating " that the action of debt that he is now about to institute against *Bennett H. Martin, Andrew Scott, John Macbeth, Thomas Strickland,* and *Sheldon Wooster,* is founded on a real subsisting debt; and this affiant

verily believes that the sum of six hundred dollars as bail will not be LITTLE ROCK, more than will satisfy the debt and costs." Whereupon a writ of Jan'y 1839 capias ad respondendum was issued, directed to the Sheriff of John- HUGHES son county; endorsed for bail in said sum, and a counterpart thereof *vs.* MARTIN was regularly issued, directed to the Sheriff of Pope county, which $\&$ OTHERS, appears to have been regularly executed on all of the defendants except *Wooster*, upon whom the former writ appears to have been executed by the Coroner, instead of the Sheriff of Johnson county, to whom it was directed.

At the return term of said writs, the defendant *Wooster* without appearing to the action, filed a separate motion to dismiss the suit on the following grounds:

1st, That there is no such affidavit filed as is required by law, to authorize the issuing of a capias in this suit.

2nd, That said writ hath not issued by authority of law, but contrary to, and in violation thereof.

3rd, That the writ of capias issued against this defendant is issued by the Sheriff of Johnson county, and served by the Coroner of said county without warrant of law.

4th, That there is no legal and valid service of said writ on defendant.

5th, The court has no jurisdiction of the case.

The other defendants also filed their motion jointly to dismiss the suit on the following grounds:

1st, That there is no such affidavit filed as is required by law to authorize the the issuing of the writ of capias in this suit.

2nd, That said writ hath not issued by authority of law, but contrary to, and in violation thereof.

3rd, That the court has obtained no jurisdiction of the case.

Upon the hearing of said motions, the court dismissed the suit, and gave final judgment for the defendants, that they go hence thereof without day, and recover of the plaintiff their costs of suit. The plaintiff excepted to the opinion of the court sustaining said motions, and filed his bill of exceptions, which composes a part of the record, and prosecutes this writ of error to reverse said judgment.

There is an assignment of errors by the plaintiff, which is joined by the defendants.

The first question presented by the record and assignment of errors,

LITTLE
ROCK,
Jan'y 1859

HUGHES
vs.
MARTIN
& OTHERS.

is this: Is the affidavit of the plaintiff sufficient to authorize the issuing of the capias ad respondendum against the defendants?

The act of 1807, *Ark. Dig.* 317, *S.* 12, contains this provision— "In all actions of debt founded on any judgment, writing obligatory, bill or note in writing, for the payment of money or other property, in actions of covenant, and in actions on the case, where the plaintiff makes affidavit or affirmation of a real subsisting debt, and of the sum in which he verily believes the defendant ought to give bail to secure such debt and cost, (which affidavit may be taken before any justice of the peace in this Territory, and before the clerk of the court from which the writ is to issue, and filed in his office,) it shall, and may be lawful for the plaintiff to sue out of the clerk's office of the proper court, a writ of summons, as is prescribed in the preceding section, or a writ of capias ad respondendum; on which capias the true species of action, and the sum for which bail is demanded, shall be endorsed on said writ."

The plaintiff in his affidavit filed in this case states that this action is founded upon a real subsisting debt, and he verily believes that the sum of six thousand dollars as bail, will not be more than will satisfy the debt and costs; and although it is not in the very phraseology of the Statute, in our opinion it comprehends every thing required to be stated; for as no person can hear it read without understanding from it that the plaintiff has sworn that he believes the defendants ought to be held to bail, in the sum of $6,000, to secure his debt mentioned in the declaration and costs of suit, and this is all that is required by the Statute; and it has been held by this court that the affidavit for a writ of attachment, which is a stronger case than the present, need not be in the very words of the Statute, and if it contains a statement of every essential fact required by the Statute to be sworn to, it is sufficient. We are therefore of the opinion that the affidavit in this case is sufficient in law to authorize the issuing of the capias ad respondendum, and consequently that the same did not issue contrary to, but in accordance with law. This question being thus determined dispenses with the necessity of our deciding the question principally argued in the defendant's brief, whether a capias ad respondendum can lawfully issue in any action founded on a writing obligatory without such affidavit or affirmation being made and filed by the plaintiff.— Therefore upon that question we give no opinion.

The next and only remaining question relates to the service of the

writ on *Wooster*, who appears to have been the only defendant served in the county where the suit was instituted. The writ was directed to the Sheriff and served by the Coroner, and therefore the execution is said to be illegal and not valid; but according to the principle acted upon by this court at the present term in the case of *Hughes* vs. *Martin*, where the reason thereof is stated, it is not considered a legal ground upon which the suit could be rightfully dismissed, on the motion of the defendants; although it should be conceded that the service is illegal and wholly insufficient, and imposed no legal obligation on the defendant to appear and answer the plaintiff's action: and no valid judgment founded thereupon could be given against him, if he had failed to appear; and therefore it is not necessary to decide any thing in relation to the service of the writ on *Wooster*, as it could have no effect upon the present decision, whatever way it might be determined, and consequently we express no opinion upon it.

From any thing appearing in the record, we do not perceive any ground for the objection that the court had no jurisdiction of the case; for if one of the defendants resided in the county where the suit was instituted when it was commenced, that was sufficient to confer on the court jurisdiction of the case; and it is not usual in practice, where the suit is prosecuted against defendants residing in different counties, to allege the fact in the declaration, or to state in what county each defendant resides. Although this would, in our opinion, be the correct practice, yet it is not deemed material to the question before us, because it is a matter in pais, which the court cannot judicially know; and therefore the party objecting to the jurisdiction were, if they relied upon the fact, bound to shew that none of the defendants were resident in the county where the venue is laid, when the suit was instituted: and they, having wholly failed to shew that fact on the record, cannot avail themselves of it. And it appears by the record that the court had jurisdiction of the matter in controversy in the suit. The right of being sued in the county where some one of the defendants reside, when they reside in different counties, is a personal privilege of which the defendants may avail themselves by a proper plea to the jurisdiction of the court; but we are not aware of any law, or settled rule of practice, which permits them to have the same advantage thereof on mere motion, and more especially where the motion is general, as in this case, and does not even pretend to state any facts which if true would deprive the court of its apparently rightful, legal jurisdiction of the cause.

LITTLE
ROCK,
Jan'y 1839

HUGHES
*vs.*
MARTIN
& OTHERS.

We are, therefore, of the opinion that the Circuit Court did err in dismissing this suit on the said motions of the defendants; and for this error the judgment ought to be, and the same is hereby reversed, annulled, and set aside with costs, and the cause remanded to said Circuit Court of Johnson county; and according to the settled practice, the case must, upon the return term thereof to the said court, be proceeded in as though the original process was returnable thereto, and all of the defendants regularly and legally served therewith: they having made themselves parties to the proceedings, by joining to the assignment of errors filed in this court. The motions of the defendants to dismiss the suit must be overruled, and leave be granted to the parties to plead over, or amend their pleadings, in the same manner as they would be authorized by law and the rules of practice to do, at the return term of the process, and such further proceedings be had in the case, as are authorized by law, and are not inconsistent with this opinion.